IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JONATHAN A. HART          :

                                         :

     v.                          : Civil Action No. DKC 2006-1180

                                         :

MICHAEL EVANS, ET AL.        :

                                         :

**MEMORANDUM OPINION**

Presently pending in this civil rights case is a motion by Defendant Calvert County Board of Commissioners ("Calvert County") to dismiss. (Paper 24). Also pending is a motion by Defendants Sheriff Michael Evans, Deputy Michael Tomlinson, and Deputy David Channing for partial dismissal or bifurcation. (Paper 25). Plaintiff Jonathan A. Hart has also filed a motion to expedite the issuance of a scheduling order for the case. (Paper 27). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will dismiss the official capacity claims against Deputies Tomlinson and Channing. Plaintiff's claims against Calvert County and Sheriff Evans will be bifurcated from his individual capacity claims against Deputies Tomlinson and Channing and will be stayed until after the resolution of those claims. Plaintiff's motion for a scheduling conference and order will be granted in part, and a separate scheduling order will be entered.

## I. Background

Plaintiff claims that he was subjected to an unnecessary and racially motivated beating during a traffic stop executed by Calvert County Sheriff's Deputies Channing and Tomlinson. The following statement of facts is based on Plaintiff's amended complaint, and is construed in the light most favorable to Plaintiff.

Plaintiff is a police officer in the District of Columbia Metropolitan Police Department. He was off-duty and was operating a motorcycle on Route 4 in Calvert County, Maryland on April 18, 2006, along with another off-duty officer, Earl Brown, who was operating another motorcycle near Plaintiff. At approximately 5:00 P.M., Plaintiff saw a blue motorcycle approach from behind him and pass him at very high speed. A short time later, Plaintiff saw an unmarked police cruiser approach from behind him, also at high speed, with its lights flashing. Plaintiff pulled his motorcycle to the side of the road, and when the police cruiser pulled up behind him, he placed his motorcycle in neutral, placed both feet on the ground, and raised his hands to shoulder level. One of the deputies left the cruiser, ran toward Plaintiff, and, without provocation, grabbed Plaintiff on each side of his body by the upper arms and threw him to the ground. Plaintiff was struck in the right side of his back while he was on the ground, and then was

handcuffed on the ground with the weight of the deputy on his lower back.

After complaining that he could not breathe, Plaintiff was moved to a sitting position.  At this time, Deputy Tomlinson attempted to pull Plaintiff's helmet from his head without removing the chin straps, causing Plaintiff substantial pain.  Deputy Tomlinson was told to remove the strap, but continued pulling on the helmet without doing so, in order to inflict further pain on Plaintiff.  Plaintiff also alleges that "Deputies Channing and Tomlinson punched the plaintiff in his lower extremities as he lay defenseless and handcuffed." (Paper 21, at 7).  Plaintiff alleges that although he did not resist any orders or provoke Deputies Tomlinson and Channing, one of the deputies drew his weapon and pointed it at Plaintiff's head.  Plaintiff's motorcycle helmet was damaged during the altercation, and his motorcycle was heavily damaged when it fell after he was pulled from it.

During the altercation, one of the deputies shouted, "'I've been following you and your friend for 5 miles!!' [']Who was that rider on the blue bike?'" (Paper 21, at 8).  Plaintiff responded by explaining that he had been riding with Officer Brown, who was operating a black motorcycle, and described his observations of the blue bike, which "kept tailgating the plaintiff, speeding off, and then switching into the plaintiff's lane without warning." (*Id.*).

Deputies Channing and Tomlinson frisked Plaintiff, and found his service weapon and police identification.  By this time, a group of onlookers had gathered.  After the frisk, Plaintiff was searched further.  This search extended to Plaintiff's "underwear, socks, boots, and bike storage compartment."  (Paper 21, at 10).  Plaintiff alleges that this search continued even after an initial frisk had revealed that he did not possess illegal weapons or contraband.  Plaintiff was not arrested, but was given a ticket for driving in excess of 120 miles per hour.  Plaintiff alleges that this traffic ticket was an attempt to cover up unconstitutional treatment, because police would ordinarily arrest a driver traveling at 120 miles per hour, rather than issuing a traffic ticket.

Plaintiff filed this action on May 10, 2006.  Plaintiff's original complaint named Deputies Tomlinson and Channing as Defendants, along with Sheriff Michael Evans and the Calvert County Sheriff's Department.  All four Defendants moved for dismissal or partial dismissal (papers 10 & 11), and Plaintiff moved to amend his complaint (paper 18).  Plaintiff's motion to amend the complaint was granted, and Plaintiff filed an amended complaint (paper 21), on August 16, 2006.

The amended complaint includes nine counts, and names Deputies Channing and Tomlinson, Sheriff Michael Evans, and Calvert County as Defendants.  Each of the individual Defendants is named in both

his individual and his official capacity.  Count I, brought under 42 U.S.C. § 1983, claims a violation of Plaintiff's constitutional rights under the Fourth, Fifth, and Eighth Amendments.  Plaintiff claims that Deputies Channing and Tomlinson directly violated his constitutional rights and that Sheriff Evans and Calvert County are liable on a theory of inadequate supervision or training.  Count II asserts a violation of Plaintiff's constitutional Due Process rights.  Plaintiff alleges that his rights were directly violated by Deputies Channing and Tomlinson, and that Sheriff Evans and Calvert County maintained a policy of authorizing and covering up such abuses.  Count III alleges that Deputies Tomlinson and Channing conspired to violate Plaintiff's civil rights.  Count IV alleges Maryland common law assault and battery, and Count V alleges intentional infliction of emotional distress, both against Deputies Tomlinson and Channing.  Count VI alleges that "Deputies Channing and Tomlinson used the criminal process against Plaintiff in order to cover up their own wrongdoing. . . ."  (Paper 21, at 19).  Counts VII and VIII allege false arrest and false detention against Deputies Tomlinson and Channing.  Count IX, brought under 42 U.S.C. § 1983, alleges that Deputies Tomlinson and Channing violated Plaintiff's civil rights because their actions, including the alleged false arrest and beating, were motivated by Plaintiff's race.  Plaintiff is African-American, and he alleges that Deputies Tomlinson and Channing are both white.

Two motions for dismissal or, in the alternative, bifurcation are pending.  Calvert County moves to dismiss all claims against it, and also adopts Sheriff Evans' arguments in favor of bifurcation as an alternative.  (Paper 24).  Sheriff Evans and Deputies Tomlinson and Channing have filed a motion for partial dismissal or in the alternative bifurcation.  (Paper 25).  Sheriff Evans seeks dismissal of all claims against him.  These claims are asserted in counts I, II, III, and IX of the amended complaint.  Deputies Tomlinson and Channing seek dismissal of claims against them in their official capacities, which are asserted in each count of the amended complaint.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III.  *Monell* Claims

Calvert County and Sheriff Evans move to dismiss the claims brought against them, in counts I, II, III, and IX of the amended complaint, for failure to train and failure to supervise under section 1983 and *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).[1]  In *Monell*, the Supreme Court of the United States

---

[1] Calvert County also moved to dismiss for lack of service. (Paper 24). This motion was filed on August 16, 2006. The following day, the Clerk issued a summons for Calvert County. Plaintiff indicates in his opposition to the motion that service was completed on August 17, 2006. (Paper 27, at 2). Calvert County has not filed a reply to Plaintiff's opposition. The court
(continued...)

recognized a claim under section 1983 against a local government for the acts of its officers, but such a claim is limited to cases in which "execution of the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. "Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1387-88 (4th Cir. 1987)). There are two general theories under which such a claim can be made in the context of alleged civil rights violations by local police:

> The principal theory locates fault in deficient programs of police training and supervision which are claimed to have resulted in constitutional violations by untrained or mis-trained police officers. A second theory, sometimes imprecisely subsumed within the first, locates fault in irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example.

*Spell*, 824 F.2d at 1389. Either type of claim must

---

[1](...continued)
assumes this issue is moot.   If not, Calvert County should immediately notify the court.

> be carefully controlled at critical points to
> avoid imposing by indirection a form of
> vicarious municipal liability flatly rejected
> by *Monell*. Those critical points are (1)
> identifying the specific "policy" or "custom";
> (2) fairly attributing the policy and fault
> for its creation to the municipality; and (3)
> finding the necessary "affirmative link"
> between identified policy or custom and
> specific violation.

*Id.*

Defendants argue that Plaintiff has not adequately plead the *Monell* claims, and this argument raises a close question. Plaintiff's allegations are thin, but may be sufficient to state *Monell* claims. Both Sheriff Evans and the Calvert County Board of Commissioners request bifurcation as an alternative to dismissal.[2] Based on the circumstances of the case, Plaintiff's *Monell* claims will be bifurcated and stayed pending resolution of Plaintiff's section 1983 claims against Deputies Tomlinson and Channing.

A court may order bifurcation pursuant to Fed.R.Civ.P. 42(b) "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Liability on a *Monell* claim in this case can only be established if Plaintiff first establishes liability for the underlying violation of his constitutional rights. *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001). Depending on the circumstances of

---

[2] Sheriff Evans' motion is styled as requesting dismissal or in the alternative bifurcation, (paper 25), and Calvert County adopts and incorporates Sheriff Evans' request for and arguments in favor of bifurcation, (paper 24, at 2).

such a section 1983 case, efficiency may be achieved and prejudice
to some or all defendants avoided by bifurcation of direct claims
from *Monell* claims, especially if bifurcation occurs before
discovery commences.

> The pending motion raises a question pertinent
> to many cases arising under 28 U.S.C. § 1983.
> That is, whether it would be most fair and
> efficient to resolve the liability of the
> active Defendants before determining whether
> liability should be imposed upon those
> inactive Defendants who are alleged to be
> "secondarily" liable. . . . Of course, there
> is no single "best" way to handle a claim
> arising under Section 1983. Each case must be
> considered in light of its particular facts
> and circumstances. In this case, the question
> of bifurcation has been raised prior to the
> commencement of discovery on any claims
> against the inactive Defendants. In this
> context, it is possible to combine bifurcation
> for trial with the postponement until after
> the first trial, of discovery relevant only to
> Plaintiff's claims against the inactive
> Defendants. Thus, it will be possible to
> defer, and possibly save altogether, the need
> for the postponed discovery.

*Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 318-19 (D.Md.
1991); *see also Gray v. Maryland*, 228 F.Supp.2d 628, 638 (D.Md.
2002) (adopting the reasoning of *Marryshow* and directing
bifurcation and stay of *Monell* claims to maximize efficiency and
avoid prejudice to defendants). Prejudice may arise in a case
involving direct section 1983 claims and *Monell* claims if
bifurcation is not ordered because *Monell* claims often involve the
introduction of evidence of past civil rights abuses and
policymakers' responses or training policies related to civil

rights abuse.  Such evidence may give rise to prejudice against the individual police officers accused of violating a plaintiff's civil rights.  *See Gray*, 228 F.Supp.2d at 638 (citing and adopting the reasoning of *Marryshow*, 139 F.R.D. at 319-20).  Bifurcation is appropriate in this case for the same reasons articulated in *Marryshow* and *Gray*.  Bifurcation has been requested, and will be ordered, before discovery commences.  This will allow the parties to delay broader discovery into possible past civil rights abuses and training programs in the Calvert County Sheriff's Department until after resolution of the narrower question of whether Plaintiff's civil rights were violated.  Accordingly, the motions to dismiss the claims against Sheriff Evans and Calvert County will be denied without prejudice to Defendants' ability to renew these motions after the resolution of Plaintiff's section 1983 claims against Deputies Tomlinson and Channing.

Plaintiff argues that he would be prejudiced by bifurcation because he will be unable to obtain needed discovery and because his *Monell* claims are central to his case, but this argument is without merit.  Plaintiff will be entitled to discover facts related to his claims against Deputies Tomlinson and Channing in the first phase of the litigation.  When and if he prevails on any section 1983 claim against either Tomlinson or Channing, he will also be entitled to discovery as to facts related to his *Monell* claims.

**IV.  Official-Capacity Claims**

Plaintiff names Sheriff Evans and Deputies Tomlinson and Channing as Defendants in both their personal and official capacities.  All of the individual Defendants move to dismiss the claims brought against them in their official capacities.

Plaintiff asserts four claims, counts I, II, III, and IX, for violation of his constitutional rights under 42 U.S.C. § 1983, which provides as follows:[3]

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Claims for monetary damages against a state official sued in his or her official capacity are not suits against a person, and hence are not authorized by section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  A Maryland sheriff sued in his or her official capacity may be either a state official or a county official, depending upon the particular duties and circumstances

---

[3] Count II does not explicitly refer to section 1983, but instead only asserts a claim based on an alleged violation of Plaintiff's constitutional due process rights.  There is no cause of action directly against a state, a local government, or state or local government officers for violation of constitutional due process rights.  *Gray*, 228 F.Supp.2d at 638-39.  Therefore, this claim will be treated as a claim under section 1983.

upon which the suit is based. *Dotson v. Chester*, 937 F.2d 920, 928 (4th Cir. 1991).[4]  In *Dotson*, the United States Court of Appeals for the Fourth Circuit held that a sheriff could be an agent of county government with respect to section 1983 claims related to conditions in an aging county jail the sheriff operated under the authority of, and with funding provided by, the county.  *Id.* at 930.   The *Dotson* court analyzed an earlier Maryland case, which held that a sheriff and sheriff's deputies were state officials for purposes of Maryland tort law while engaging in the statewide enterprise of law enforcement, including conducting a vehicular chase.  *Rucker v. Harford County*, 316 Md. 275, 278, 281 (1989), *superseded by statute as recognized by* 104 Md.App. 439, 443-44 (Md.Ct.Spec.App. 1995).

The official capacity claims against Deputies Tomlinson and Channing will be dismissed, because they were involved in the statewide duty of law enforcement at the time they stopped Plaintiff and allegedly violated his civil rights, like the sheriff's deputies in *Rucker*.[5]   Because Deputies Tomlinson and

---

[4] Presumably, the same analysis applies to a sheriff's deputy sued in his or her official capacity.  *See Rucker v. Harford County*, 316 Md. 275, 281 (1989) (holding with respect to Maryland tort law status that deputy sheriff, like a sheriff, is a state employee because he "functions as the alter ego of the sheriff"), *superseded by statute as recognized by* 104 Md.App. 439, 443-44 (Md.Ct.Spec.App. 1995).

[5] Plaintiff names Deputies Tomlinson and Channing as Defendants in both their individual and official capacities for all
(continued...)

Channing were acting as agents of the state, a claim against them for monetary damages under section 1983 is treated as a claim directly against the state, and such a claim is not authorized by section 1983. *See Will*, 491 U.S. at 71.

The analysis of whether Sheriff Evans acted as an agent of the state or the county in his supervision and training of deputy sheriffs is more complicated. Resolution of this issue is not necessary at this time, because the official capacity claims against Sheriff Evans either state a claim against Calvert County, which Plaintiff has separately pled, or against the state, which would require that they be dismissed. In either case, because Plaintiff's *Monell* claims will be bifurcated and stayed, this issue need not be resolved, if at all, until after the resolution of Plaintiff's section 1983 claims against Deputies Tomlinson and Channing.[6]

---

[5](...continued)
counts, including the state tort claims asserted only against these two Defendants. Maryland common law claims, however, do not distinguish between individual capacity and official capacity claims. *Ritchie v. Donnelly*, 324 Md. 344, 374-75 (1991).

[6] In his opposition to Defendants' motions to dismiss, Plaintiff argues that certain paragraphs of Defendants' answer to the amended complaint should be stricken. Plaintiff has not filed a motion for this relief pursuant to Fed.R.Civ.P. 7(b), and does not set fort in adequate detail the grounds upon which Plaintiff seeks this relief. Therefore, the court will not consider this request.

## V.  Conclusion

For the foregoing reasons, the official capacity claims asserted against Deputies Tomlinson and Channing in counts I, II, III, and IX of the amended complaint will be dismissed.  The *Monell* claims against Calvert County and Sheriff Evans in the counts I, II, III, and IX will be bifurcated and stayed, pending resolution of Plaintiff's direct section 1983 claims against Deputies Tomlinson and Channing.  Defendants' motions to dismiss will otherwise be denied without prejudice.  Plaintiff's motion for a scheduling conference and scheduling order will be granted in part, and a separate scheduling order will be entered for Plaintiff's claims against Deputies Tomlinson and Channing.  Claims against Deputies Tomlinson and Channing will go forward under all counts of the amended complaint, but they will be named only in their personal capacities in counts I, II, III, and IX.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

15