IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JONATHAN A. HART :

v. : Civil Action No. DKC 2006-1180

MICHAEL EVANS, ET AL. :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case is a motion for partial summary judgment by Defendants Deputy Sheriff Michael Tomlinson and Deputy Sheriff David Canning.[1] (Paper 53). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will grant the motion.

**I. Background**

Plaintiff claims that he was subjected to an unnecessary and racially motivated beating during a traffic stop executed by Calvert County Sheriff's Deputies Canning and Tomlinson. The following statement of facts is based on Plaintiff's amended complaint, and is construed in the light most favorable to Plaintiff.

[1] Plaintiff refers to one of the Defendants as David Channing in his complaint and subsequent filings. Defendants refer to this officer as David Canning, which is also the name used in a filed affidavit. Accordingly, the court will use the name Canning when discussing the named officer.

Plaintiff is a police officer in the District of Columbia Metropolitan Police Department. He was off-duty and was operating a motorcycle on Route 4 in Calvert County, Maryland on April 18, 2006, along with another off-duty officer, Earl Brown, who was operating another motorcycle near Plaintiff. At approximately 5:00 p.m., Plaintiff saw a blue motorcycle approach from behind him and pass him at very high speed. A short time later, Plaintiff saw an unmarked police cruiser approach from behind him, also at high speed, with its lights flashing. Plaintiff pulled his motorcycle to the side of the road, and when the police cruiser pulled up behind him, he placed his motorcycle in neutral, placed both feet on the ground, and raised his hands to shoulder level. One of the deputies left the cruiser, ran toward Plaintiff, and, without provocation, grabbed Plaintiff on each side of his body by the upper arms and threw him to the ground. Plaintiff was struck in the right side of his back while he was on the ground, and then was handcuffed on the ground with the weight of the deputy on his lower back.

After complaining that he could not breathe, Plaintiff was moved to a sitting position. At this time, Deputy Tomlinson attempted to pull Plaintiff’s helmet from his head without removing the chin straps, causing Plaintiff substantial pain. Deputy Tomlinson was told to remove the strap, but continued pulling on the helmet without doing so, in order to inflict further pain on

Plaintiff. Plaintiff also alleges that "Deputies Channing (sic) and Tomlinson punched the plaintiff in his lower extremities as he lay defenseless and handcuffed." (Paper 21, at 7). Plaintiff alleges that, although he did not resist any orders or provoke Deputies Tomlinson and Canning, one of the deputies drew his weapon and pointed it at Plaintiff's head. Plaintiff's motorcycle helmet was damaged during the altercation, and his motorcycle was heavily damaged when it fell after he was pulled from it.

During the altercation, one of the deputies shouted, "'I've been following you and your friend for 5 miles!!' [']Who was that rider on the blue bike?'" (Paper 21, at 8). Plaintiff responded by explaining that he had been riding with Officer Brown, who was operating a black motorcycle, and described his observations of the blue bike, which "kept tailgating the plaintiff, speeding off, and then switching into the plaintiff's lane without warning." (*Id.*).

Deputies Canning and Tomlinson frisked Plaintiff, searched his motorcycle, and found his service weapon and police identification. By this time, a group of onlookers had gathered. After the frisk, Plaintiff was searched further. This search extended to Plaintiff's "underwear, socks, boots, and bike storage compartment." (Paper 21, at 10). Plaintiff alleges that this search continued even after an initial frisk had revealed that he did not possess illegal weapons or contraband. Plaintiff was not arrested, but was given a ticket for driving in excess of 120 miles

per hour. Plaintiff alleges that this traffic ticket was an attempt to cover up unconstitutional treatment, because police would ordinarily arrest a driver traveling at 120 miles per hour, rather than issuing a traffic ticket.

Plaintiff's original complaint named Deputies Tomlinson and Canning as Defendants, along with Sheriff Michael Evans and the Calvert County Sheriff's Department. All four Defendants moved for dismissal or partial dismissal (papers 10 & 11), and Plaintiff moved to amend his complaint (paper 18). Plaintiff's motion to amend the complaint was granted, and Plaintiff filed an amended complaint (paper 21), on August 16, 2006.

The amended complaint includes nine counts, and names Deputies Canning and Tomlinson, Sheriff Michael Evans, and Calvert County as Defendants. Each of the individual Defendants were named in both his individual and his official capacity. Count I, brought under 42 U.S.C. § 1983, claims a violation of Plaintiff's constitutional rights under the Fourth, Fifth, and Eighth Amendments. Plaintiff claims that Deputies Canning and Tomlinson directly violated his constitutional rights and that Sheriff Evans and Calvert County are liable on a theory of inadequate supervision or training. Count II asserts a violation of Plaintiff's constitutional Due Process rights because Sheriff Evans and Calvert County maintained a policy of authorizing and covering up abuses by deputies. Count III alleges that Deputies Tomlinson and Canning conspired to violate

Plaintiff's civil rights. Count IV alleges Maryland common law assault and battery, and Count V alleges intentional infliction of emotional distress, both against Deputies Tomlinson and Canning. Count VI alleges that "Deputies Channing (sic) and Tomlinson used the criminal process against Plaintiff in order to cover up their own wrongdoing. . . ." (Paper 21, at 19). Counts VII and VIII allege false arrest and false detention against Deputies Tomlinson and Canning. Count IX, brought under 42 U.S.C. § 1983, alleges that Deputies Tomlinson and Canning violated Plaintiff's civil rights because their actions, including the alleged false arrest and beating, were motivated by Plaintiff's race. Plaintiff is African-American, and he alleges that Deputies Tomlinson and Canning are both white.

Two motions for dismissal or, in the alternative, bifurcation were filed. Calvert County moved to dismiss all claims against it, and adopted Sheriff Evans' arguments in favor of bifurcation as an alternative. (Paper 24). Sheriff Evans and Deputies Tomlinson and Canning filed a motion for partial dismissal or in the alternative bifurcation. (Paper 25). The court dismissed the claims against Deputies Tomlinson and Canning in their official capacities and bifurcated the claims against Calvert County and Sheriff Evans. (Paper 30).

Defendants Deputy Sheriff Tomlinson and Deputy Sheriff Canning filed a motion for partial summary judgment pursuant to Rule 56 on

July 11, 2007. (Paper 53). These defendants believe they are entitled to summary judgment on Counts II, III, V, VI, VII, VIII, and IX.[2] Defendants challenge Counts II, III, V, and IX for insufficient evidence and Counts VI, VII and VIII for lack of evidence and on the ground that they are statutorily immune from such claims.

**II. Standard of Review**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to

---

[2] Defendants' motion was based on Plaintiff's complaint. Its arguments apply with equal force to the amended complaint. Deputies Tomlinson and Canning note that Count II may not relate to them, but argue that summary judgment is appropriate if it does. They concede that there are material disputes of fact with regard to Counts I and IV, which allege a section 1983 excessive force claim and a common law assault and battery claim.

judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**III. Analysis**

In Count II, Plaintiff alleges that it was the policy and practice of Calvert County to cover up and direct their police officers to cover up civil rights and constitutional violations. Count II does not explicitly refer to section 1983, but instead only asserts a claim based on an alleged violation of Plaintiff's constitutional due process rights. Because there is no cause of action directly against a state, a local government, or state or local government officers for violation of constitutional due process rights, *Gray v. Maryland*, 228 F.Supp.2d 628, 638-39 (D.Md 2002), the court construed Count II as a claim under section 1983 (paper 29). Defendants assert that they are entitled to summary judgment on Count II because it does not appear to assert any claim against the individual officers, but rather appears to be an allegation against the County. Even if Count II did assert a claim against Defendants, they note that Plaintiff has not presented any evidence to support Count II as against them. Plaintiff's opposition does not address Defendants' contentions as to Count II.[3] Accordingly, Defendants are entitled to summary judgment on Count II.

---

[3] Indeed, Plaintiff's opposition only contests Defendants' motion as to Count III. The remainder of Plaintiff's opposition summarizes a series of cases regarding excessive use of force. Because Defendants' did not move for summary judgment on Count I, these portions of Plaintiff's opposition are off point.

In Count III, Plaintiff alleges a conspiracy to violate his civil rights. Defendants assert that Plaintiff has failed to present any evidence of a conspiracy. Plaintiff's opposition argues that conspiracies are often proved by circumstantial, rather than direct evidence. Plaintiff does not point to any particular evidence from which to infer the existence of a conspiracy. Accordingly, Count III fails.

In Count V, Plaintiff alleges that Defendants Canning and Tomlinson caused the intentional infliction of emotional distress. Defendants contend that this claim must fail because Plaintiff has neither shown evidence of extreme and outrageous behavior, nor of any severe emotional distress. Again, Plaintiff's opposition failed to address Defendants contentions with respect to this count.

To prove a claim of intentional infliction of emotional distress, Plaintiff must show: (1) Defendants' conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (2) a causal connection existed between the conduct and the emotional distress; and (4) the emotional distress was severe (the "severity" prong). *Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F.Supp.2d 658, 666 n. 20 (D.Md. 2007); *see also Caldor v. Bowden*, 330 Md. 632, 641-42 (1993) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)). Each element of the tort must be established by adequate proof. *Caldor*, 330 Md. at 642. To satisfy the severity

prong, a plaintiff must show "he suffered a severely disabling emotional response to the defendant's conduct." *Harris*, 281 Md. at 570; *see also Rich v. United States of America*, 158 F.Supp.2d 619, 630 (D.Md. 2001) (plaintiffs' claim failed as they provided only an unsubstantiated allegation that they suffered "severe emotional distress, indignity, trauma, and pain and anguish"); *Caldor*, 330 Md. at 643-45 (finding that Plaintiff failed to establish the severity prong after showing one visit to a psychologist, and offering his own testimony regarding weight loss and feeling upset, embarrassed, confused and "bad about himself" as a result of the defendant's conduct).  Plaintiff failed to present any evidence that would suggest that he suffered a severe emotional response. Therefore, summary judgment to Count V will be granted for Defendants.

Plaintiff alleges that Defendants committed "malicious abuse of process", false arrest, and false detention in Counts VI, VII, and VIII of his amended complaint.[4]  Defendants move for summary judgment arguing that they are statutorily immune against such claims and that Plaintiff has failed to present factual support for the elements of his claims.

---

[4] Defendants' motion for summary judgment appears to have been based on the Counts in Plaintiff's original complaint (paper 1), rather than the amended complaint (paper 21).  In the amended complaint, Plaintiff split his original Count VIII into new counts VI, VII, and VIII.  Defendants' arguments in support of summary judgment address the substance of each of those counts in arguing for summary judgment on Count VIII.

Count VI is a claim against Defendants Tomlinson and Canning for false arrest. Count VII is a claim against Defendants for false detention or imprisonment. Under Maryland law, the necessary elements of false arrest and false imprisonment claims are the same: "1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification." *Heron v. Strader*, 361 Md. 258, 264 (2000); *see also De Ventura v. Keith*, 169 F.Supp.2d 390, 398 (D.Md. 2001). The interrelationship between false arrest and false imprisonment is such that the "legal justification" to detain element is the "equivalent to legal authority" under the law of arrest. *Dett v. State*, 161 Md.App. 429, 441, *aff'd* 391 Md. 81 (2005). "With regard to an arrest by a police officer, the officer's liability 'will ordinarily depend upon whether or not the officer acted within his legal authority to arrest.'" *Green v. Brooks*, 125 Md.App. 349, 366 (1999) (quoting *Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995)).

An officer has legal authority to arrest a suspect if the officer was present or in view when the suspect attempted to commit a felony or misdemeanor. *See* Md.Code Ann., Crim. Proc. § 2-202 (2002). A warrantless arrest of an individual in a public place for a felony or a misdemeanor committed in the officer's presence is consistent with the Fourth Amendment if the arrest is supported by probable cause. *United States v. Watson*, 423 U.S. 411, 424 (1976); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354

(2001) (stating that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest. *United States v. Garcia*, 848 F.2d 58, 59-60 (4th Cir. 1988). Two factors govern the determination of probable cause in a given situation: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). Probable cause "could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id*. Further, because "the reasonableness of a seizure under the Fourth Amendment should be analyzed from an objective perspective[,] . . . the subjective state of mind of the defendant, whether good faith or ill will, is irrelevant[.]" *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 n. 5 (4th Cir. 1996).

Defendants assert that they possessed probable cause to arrest Plaintiff under Maryland Code Transportation Articles §§ 21-904(b) and 26-202(a)(3). Those sections authorize an officer to arrest a driver for fleeing or eluding.

Taking the facts in the light most favorable to Plaintiff, Defendants have established that they possessed probable cause for an arrest. Plaintiff's argument appears to be that Defendants lacked probable cause to arrest him because 1) he was not associated with the individual the police were chasing and was merely speeding on his motorcycle, and 2) he pulled to the side of the road and raised his hands soon after noticing the lights of the police car behind him. While the facts must be viewed in the light most favorable to Plaintiff as the nonmoving party, for purposes of deciding whether probable cause to arrest existed, the court must consider the facts objectively as known by a reasonable officer at the time. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, "[t]he fact that the [arresting] officers were factually mistaken [does] not render the stop illegal." *United States v. Williams*, 85 F.App'x 341, 347 (4th Cir. 2004) (citing *United States v. Chantahsouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003) ("[A]n officer's reasonable mistake of fact may provide the objective grounds for reasonable suspicion or probable cause required to justify a traffic stop, but an officer's mistake of law may not."). "[I]f an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable." *United States v. Arias*, 213 F.App'x 230, 232 (4th Cir. 2007).

Deputies Canning and Tomlinson observed three motorcyclists traveling at high speeds that appeared to exceed the speed limit

and proceeded to chase. (Paper 53, Ex. A, Tomlinson Dep. ¶ 4 and Ex. B., Canning Dep. ¶ 3). The facts as viewed in the light most favorable to Plaintiff would suggest that he was not fleeing, but was mistakenly perceived to be because he was operating his vehicle at a speed which exceeded the legal limit on the same stretch of Route 4 as another motorcyclist who did flee. Because Defendants had probable cause to arrest the cyclists who fled when the officers began chase and because a reasonable officer could mistake Plaintiff for being one of the fleeing cyclists, Defendants' reasonable mistake of fact does not undermine the probable cause that justified the stop. Moreover, because Defendants did not actually arrest Plaintiff, but merely stopped him, Defendants need only establish reasonable articulable suspicion to justify the stop. *See, e.g.*, *Terry v. Ohio*, 392 U.S 1 (1968). Defendants possessed reasonable suspicion that Plaintiff was speeding and therefore were justified in stopping him on that basis as well. Accordingly, Defendants had legal justification for the stop and detention and their motion for summary judgment on Counts VI and VII will be granted.

Plaintiff's seventh claim in his amended complaint alleges a "malicious abuse of process" against him by Deputies Tomlinson and Canning. Plaintiff appears to have conflated malicious use of process and abuse of process, which are two different torts under Maryland law. The Court of Appeals emphasized the difference

between the two causes of action in *Walker v. American Security Co.*, 237 Md. 80, 87 (1964):

> A tort action for abuse of process, on the one hand, and the tort actions for malicious prosecution and malicious use of process, on the other hand, are essentially different and independent actions. An action for abuse of process differs from actions for malicious prosecution and malicious use of process in that abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff, while actions for malicious prosecution and malicious use of process are concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause.

Because the proceedings initiated against Plaintiff were not terminated in his favor, which would defeat a malicious use of process or malicious prosecution claim, the court presumes Plaintiff intended to plead an abuse of process claim. An abuse of process claim requires a plaintiff to show that 1) the defendants willfully used process in a manner not contemplated by law; 2) in order to satisfy an ulterior motive; and 3) damages resulted. *One Thousand Fleet Ltd. Partnership v. Guerriero*, 346 Md. 29, 38 (Md. 1997). Plaintiff has presented no evidence that Defendants used any process for an illegitimate purpose.

Moreover, to maintain a claim for abuse of process, a plaintiff must allege that he was unlawfully arrested or his property unlawfully seized. *Herring v. Citizens Bank and Trust*

*Co.*, 21 Md.App. 517, 536 (1974)("[T]he injuries contemplated by this particular tort (and an indispensable element of it) are limited to an improper arrest of the person or an improper seizure of property."); *see also One Thousand Fleet*, 346 Md. at 45-46 ("The plaintiff [must] establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process."). Plaintiff was not arrested and his property was not seized.

In Count IX, Plaintiff alleges a "race based civil rights violation" based on his claim that Deputies Canning and Tomlinson acted against him in a racially discriminatory manner. Again, Defendants assert that Plaintiff has failed to present any evidence to support this claim and Plaintiff's opposition failed to address Defendants' contention. Because Plaintiff has failed to offer anything in support of his bare allegation that Defendants acted with discriminatory intent and because there is nothing in evidence that would raise an inference of such an intent, summary judgment will be granted for Defendants on Count IX.

**V. Conclusion**

For the foregoing reasons, the motion of Defendants Tomlinson and Canning's for summary judgment will be granted. A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge